UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

```
JOSE ANTONIO CUEVAS ANDUJAR,      *
                                  *
          Plaintiff               *
                                  *
     v.                           *     Civ. No. 97-2200(PG)
                                  *
CONSORCIO DEL SUROESTE, ET AL.,   *
                                  *
          Defendants              *
                                  *
-------------------------------*
```

## OPINION AND ORDER

Pending before the Court are various motions for summary judgment. Defendants the Municipality of Cabo Rojo (the Municipality) and Mr. Santos Padilla Ferrer, former Mayor of Cabo Rojo, in his official capacity, have filed three motions for summary judgment (Docket Nos. 5, 22 and 24). Codefendant Consorcio del Suroeste (the Southwest Consortium or Consortium) filed another motion for summary judgment, which defendants the Municipality and Padilla Ferrer adopted (Docket Nos. 35, 36). Plaintiff filed an opposition to the Municipality's and Padilla Ferrer's motions (Docket No. 19). On February 8, 1999 plaintiff filed a motion requesting an extension of time to answer the Consortium's summary judgment and requesting a status conference. (Docket No. 37). The motion was not ruled upon, almost nine months have elapsed and plaintiff has not filed an opposition to the Consortium's motion. Defendants all argue that plaintiff's First Amendment claim should be dismissed on the

Civ. No. 97-2200(PG)                                                    2.

ground that plaintiff's position is a "trust" position for which compatible political affiliation constitutes a legitimate qualification.  See Branti v. Finkel, 445 U.S. 507 (1980); Elrod v. Burns, 427 U.S. 347 (1976).  They also claim that plaintiff does not have a right to continued employment under Commonwealth law.

## I.  Background

Plaintiff, Cuevas Andújar, signed an employment contract with the Consortium to be the Local Director of Participant Services.  The contract was to run from July 1, 1996, to December 31, 1996.  The employment contract was amended on October 29, 1996, to extend the same up to June 30, 1997.  On November 1996, Padilla Ferrer was elected mayor of Cabo Rojo for the New Progressive Party.  On November 14, 1996, plaintiff received a letter from the Consortium notifying him of his termination as Local Director of Participant Services for the Municipality of Cabo Rojo, to become effective on February 28, 1997.  Plaintiff initiated the present action for damages and reinstatement pursuant to 42 U.S.C. § 1983 against the Consortium; Santos Padilla Ferrer, as Mayor of Cabo Rojo; the Municipality of Cabo Rojo and the Commonwealth of Puerto Rico alleging political discrimination and deprivation of his property interest in continued employment.

Civ. No. 97-2200(PG)                                              3.

A. **Standard of Review**

Summary judgment should issue whenever "the pleadings, depositions, answer to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Although all competent evidence and reasonable inferences are viewed in the light most favorable to Cuevas Andújar, he cannot carry the day on "mere conclusory allegations, improbable inferences, and unsupported speculation." Ortiz-Piñero v. Rivera-Arroyo, 84 F.3d 7, 11 (1st Cir. 1996) (quoting O'Connor v. Steeves, 994 F.2d 905, 906-07 (1st Cir.), cert. denied, 510 U.S. 1024 (1993) (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

B. **First Amendment Claim**

In a case of political discrimination the plaintiff must first show that party affiliation was a substantial or motivating factor for the challenged action. Ortiz-Piñero, 84 F.3d at 11-12, citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Jirau-Bernal v. Agrait, 37 F.3d 1, 3 (1st Cir. 1994). The burden then shifts to defendants to establish either a non-discriminatory reason for the dismissal or that plaintiff held a "political" position for which party affiliation constituted an

Civ. No. 97-2200(PG)                                                        4.

appropriate qualification for continued employment. <u>Id.</u> at 12
(citations omitted).

    Assuming, without deciding, that plaintiff presented sufficient
competent evidence to show that his political affiliation motivated
his dismissal, the burden then shifted to defendants to establish
that political affiliation was an appropriate requirement for the
effective performance of the position of Local Director of
Participant Services.

    Whether Cuevas Andújar's position was "political" does not
depend upon loose-fitting labels such as "confidential" or
"policymaking" but on the substance of the duties inherent in the
position itself. <u>Id.</u> citing <u>Branti</u>, 445 U.S. at 518. The First
Circuit employs a two-part inquiry to identify "political" positions
under the <u>Branti/Elrod</u> analysis:

> First, we inquire whether the overall functions of the
> employee's department or agency involve "decision making on
> issues where there is room for political disagreement on
> goals or their implementation." Second, we decide whether
> the particular responsibilities of the plaintiff's
> position, within the department or agency, resemble those
> of a "policymaker, privy to confidential information, a
> communicator, or some other office holder whose function is
> such that party affiliation is an equally appropriate
> requirement" for continued tenure. Among the indicia
> material to the second element are "relative pay, technical
> competence, power to control others, authority to speak in
> the name of policymakers, public perception, influence on
> programs, contact with elected officials, and
> responsiveness to partisan politics and political leaders."

<u>Id.</u> (quotations and citations omitted).

Civ. No. 97-2200(PG)                                              5.


     The Court will now examine the evidence in the light most
favorable to Cuevas Andújar in performing the two-part test.

### II. The Southwest Consortium

     The Job Training Partnership Act (JTPA),29 U.S.C. § 1501, et
seq., provides federal funding to state government for job training
and placement programs for economically disadvantaged persons.
Mississippi Dept. of Economic & Community Development v. United
States Dept. of Labor, 90 F.3d 110, 111 (5th Cir. 1996).  Under the
JTPA the governor of a state must designate as a Service Delivery
Area (SDA) any unit or consortium of contiguous units of general
local government that complies with the requirements of 29 U.S.C.
§ 1511(a)(4)(A).   The Southwest Consortium, composed of ten
municipalities, inter alia, Municipality of Cabo Rojo, was the
designated SDA of the Governor of Puerto Rico for receipt of federal
funding.  The Consortium is charged with marshaling and administering
the JTPA funds and with distributing the same for the various job
training and placement programs.  The Consortium is responsible for
developing and implementing the job training and placement programs
for economically disadvantaged persons.  The Consortium's overall
functions involve decision making on issues where there is room for
political disagreement on goals or their implementation. See, e.g.,
O'Connor v. Steves, 994 F.2d at 910 (the first prong of the two-part
inquiry of Branti/Elrod analysis was readily met when the municipal

Civ. No. 97-2200(PG)                                                    6.

department for which plaintiff worked was responsible for developing

and implementing public works programs, since "'[e]lections often

turn on the success or failure of the incumbent [administration] to

provide these services'"); Jiménez Fuentes v. Torres Gaztambide, 807

F.2d 236, 242 (1st Cir. 1986), cert. denied, 481 U.S. 1014 (1987)

(finding that regional director of Commonwealth Housing Department,

charged with ameliorating housing conditions among low and middle

income families, was a position "related to partisan political

interests"); Ortiz Piñero v. Rivera Arroyo, 84 F.2d at 13 (finding

that the Office of Federal Programs, charged with obtaining and

administering federal funding for various public works projects, is

a municipal department or agency whose overall function involves

decision making on issues where there is room for political

disagreement on goals or their implementation).

The Court therefore finds that defendants met the first-prong

under the Branti and Elrod test.

### III. Duties Inherent in the Position of Local Director of Participant Services

Under the second prong, the Court must examine the evidence

presented by defendants to show that "the particular responsibilities

of the plaintiff's position, within the [Consortium], resemble those

of 'a policymaker, privy to confidential information, a communicator,

or some other office holder whose function is such that party

affiliation in an equally appropriate requirement' for continued

Civ. No. 97-2200(PG)                                              7.

tenure." <u>Ortiz-Piñero</u>, 84 F.3d at 13 (citing <u>O'Connor</u>, 994 F.2d
910). Some of the factors used by the Courts as probative indicia
that a position is "political" include "relative pay, technical
competence, power to control others, authority to speak in the name
of the policy makers, public perception, influence on programs,
contact with elected officials, and responsiveness to partisan
politics and political leaders. . . ." <u>Ortiz-Piñero</u>, 84 F.3d at 14
(citing <u>O'Connor</u>, 994 F.2d at 910.

     The Court will first look at plaintiff's signed job description.
<u>See</u> <u>Roldán Plumey v. Cerezo-Suárez</u>, 115 F.3d 58, 62 (1st Cir. 1997)
("We consider the job description to be the best, and sometimes
dispositive, source for determining the position's inherent
functions."); <u>Ortiz-Piñero</u>, 84 F.3d at 13 ("Written signed job
descriptions may provide legally probative evidence as to the
responsibilities inherent in a particular government position.");
<u>Méndez-Palou v. Rohena-Betancourt</u>, 813 F.2d 1255, 1260 (1st Cir. 1987)
("Whenever possible, we will rely upon this document because it
contains precisely the information we need. . . ."). According to
the job description, the duties and responsibilities assigned to
plaintiff as Local Director of Participant Services are, <u>inter alia</u>,
to:

     a) Direct and supervise administrative and operational phases of
the JTPA law program in the local office;

Civ. No. 97-2200(PG)                                              8.

b) Prepare the employee work program at the local office, assign tasks, and collaborate in the compliance and performance thereof;

c) Participate in the development of administrative and programmatic phases that will be utilized in the program at a central level and implement same at a local level;

d) Supervise and evaluate the performance of local office personnel;

e) Coordinate with the mayor all programs that are advantageous to the municipality and that comply with the expectations and needs of its residents;

f) Promote programs with public agencies and private enterprises within the municipality;

g) Provide orientation to public and private entities on all programs under the JTPA and

h) Authorize the designation of project participants. (Defendants' Exhibit A to Statement of Material Facts).

As seen above, the functions assigned to the position of Local Director of Participant Services are broad and far ranging. Plaintiff's overall functions clearly authorized and required substantial participation in the policymaking process of the Consortium and the Municipality of Cabo Rojo on decisions where there is room for political disagreement on goals or their implementation. Plaintiff's position as Local Director of Participant Service was the

Civ. No. 97-2200(PG)                                        9.

highest position of the Local Office of the Consortium and he was
paid the highest salary of all the employees of the local office.  He
was in charge of the supervision and evaluation of the performance of
the local office personnel, as well as the direction and supervision
of the administrative and operational phases of the JTPA programs in
the local office.  Although Cuevas Andújar reported directly to the
Consortium's Chief Executive Officer, he coordinated with the mayor
all programs  that were advantageous to the municipality and was in
charge of promoting programs with public agencies and private
enterprises within the municipality.

     Plaintiff's conclusory allegations that he was not a public
policymaker; that he had no direct relation to the Consortium's
President of the Board of Mayors or to the Mayor of Cabo Rojo,
Padilla Ferrer, and that he was not the third kind of employee
specified in the Elrod-Branti test cannot defeat defendants' summary
judgment.  The Court is persuaded that Cuevas Andújar's position as
Local Director of Participant Services in the local office of Cabo
Rojo demanded the exercise of judgment and discretion that touched
upon partisan politician concerns.  Cuevas Andújar's oversight of the
JTPA program operations in the local office of Cabo Rojo, as well as
his input in formulating the policy that would guide the
municipality's programs, makes Cuevas Andújar's position one for
which political affiliation is an appropriate requirement.

Civ. No. 97-2200(PG)                                                    10.

## IV. **Due Process Claim**

Cuevas Andújar claims that he was deprived of his property interest in continued employment.  "[W]hether a government employee possessed a protectable 'property right,' or a legitimate expectation of continued employment, is controlled by the employment contract or state law."  Ortiz-Piñero, 84 F.3d at 17.

Cuevas Andújar's employment contract included clause No. 14, which permitted the unilateral, unconditional termination at any time provided written notice of intention to rescind was served fifteen days prior to intended date of rescission.  A letter signed by the Interim President of the Board of Mayors and the Executive Director, and dated February 14, 1997, informed plaintiff that effective February 28, 1997, he was being terminated in his position as Local Director of Participant Services.  (Exhibit H of Consortium's Motion for Summary Judgment).  Since the contract permitted Cuevas Andújar's unilateral termination, Commonwealth law would be the only possible basis for plaintiff's claim to continued employment. The Court's finding that Cuevas Andújar's position was "political," under the Jiménez Fuentes test, disposes of plaintiff's due process claim because being a "trust" position, compatible political affiliation constituted a legitimate qualification for continued employment. See, Branti, 445 U.S. at 510; De Choudens v. Government Development Bank of P.R., 801 F.2d 5, 8 (1st Cir. 1986), cert. denied, 481 U.S.

Civ. No. 97-2200(PG)                                                11.

1013 (1987).  Therefore, Cuevas Andújar had neither a property right
nor a contract right to continued employment as Local Director of
Participant Services.

### Conclusion

Plaintiff's First Amendment claim fails due to the Court's
conclusion as a matter of law that Cuevas Andújar's position was a
"political position."  The due process claim also fails because
Cuevas Andújar possessed no right to, or reasonable expectation of,
continued employment as the Consortium's Local Director of
Participant Services.

In view of the above, Southwest Consortium's motion for summary
judgment (Docket #35), adopted by codefendants the Municipality of
Cabo Rojo and Mr. Santos Padilla Ferrer, as former Mayor of Cabo
Rojo, is hereby **GRANTED**.  The Court hereby **ORDERS** that the complaint
is **DISMISSED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, December 13 , 1999.

JUAN M. PEREZ-GIMENEZ
U. S. District Judge

AO 72A
(Rev. 8/82)